UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MICAH DONALD HEWITT, | 4:26-CV-04087-ECS |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S FIRST MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND MOTION TO AMEND; GRANTING IN PART PLAINTIFF'S MOTION TO EXPEDITE; DENYING AS MOOT PLAINTIFF'S SECOND MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS; DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL AND MOTION FOR CLASS CERTIFICATION; AND 1915A SCREENING |
| NICK LAMB, Secretary of Corrections, Individual & Official Capacity; JOSEPH ROEMMICH, Warden of South Dakota State Penitentiary, Individual & Official Capacity; SHELDON HOFER, Housing Sergeant of East/Federal Hall at South Dakota State Penitentiary, Individual & Official Capacity; DARA ALVAND, DDS, Dentist at South Dakota State Penitentiary, Individual & Official Capacity; MICHELLE EVANS, RDA, Dental assistant at South Dakota State Penitentiary, Individual & Official Capacity; RICK JOHNSTON, Associate Warden of South Dakota State Penitentiary, Individual & Official Capacity; DR. AARON HAYNES, MD, Medical Director at South Dakota State Penitentiary, Individual & Official Capacity; DESIRAE KUMMER, Medical Charge RN at South Dakota State Penitentiary, Individual & Official Capacity; AMBER PIRGGLIA, Director of South Dakota State Penitentiary, Individual & Official Capacity; CIERRA REVOBRIO, Nursing Manager at South Dakota State Penitentiary, Individually & Official Capacity; MELISSA MATURAN, Grievance Coordinator at South Dakota State Penitentiary, Individual & Official Capacity; DR. MICHAEL LEE, Chief Dental Officer at South Dakota State Penitentiary, Individual & Official Capacity, | |
| Defendants. | |

Plaintiff Micah Hewitt, an inmate at the South Dakota State Penitentiary, filed a pro se Complaint alleging a violation of his civil rights pursuant to 42 U.S.C. § 1983. Doc. 1. Hewitt moves for leave to proceed in forma pauperis and provided a certified copy of his prisoner trust account report. Docs. 2, 3.

## I.    Motion for Leave to Proceed In Forma Pauperis

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The court may accept partial payment of the initial filing fee where appropriate. Thus, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (per curiam) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of

(A) the average monthly deposits to the prisoner's account; or
(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Hewitt reports average monthly deposits of $112.94 and an average monthly balance of $7.24. Doc. 3 at 3. Based on this account information, the Court grants Hewitt leave to proceed in forma pauperis and waives his initial partial filing fee because the initial partial filing fee would be greater than his current balance. See 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

2

To pay his filing fee, Hewitt must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

Id. The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Hewitt's institution. Hewitt remains responsible for the entire filing fee, as long as he is a prisoner. See In re Tyler, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.    Motion to Amend

Hewitt moves for leave to amend his complaint. Doc. 17. Under Federal Rule of Civil Procedure 15(a)(1)(A), "[a] party may amend its pleading once as a matter of course no later than . . . 21 days after serving it." Because Hewitt's motion to amend is filed within the time provided by Rule 15(a)(1)(A), this Court grants Hewitt's motion to amend as a matter of course. "[A]n amended complaint supercedes an original complaint and renders the original complaint without legal effect." In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000). Thus, Hewitt's Motion to Amend, Doc. 17, is granted, and the Clerk of Court shall file his proposed amended complaint, Doc. 17-2.[1]

---

[1] Hewitt has not refiled with his proposed amended complaint his attachments to his original complaint See generally Docs 17, 17-1, 17-2, but see Doc 1-1 Based on the fact that Hewitt referenced the attachments in his proposed amended complaint, it is clear that Hewitt's proposed amended complaint incorporates the attachments See Doc 17-2 Thus, this Court considers the attachments when screening Hewitt's Amended Complaint

3

## III.    1915A Screening

Hewitt sues the following employees of the State of South Dakota:[2] South Dakota Department of Corrections (DOC) Secretary of Corrections Nick Lamb, South Dakota State Penitentiary (SDSP) Warden Joseph Roemmich, SDSP Housing Sergeant of East/Federal Hall Sheldon Hofer, SDSP Associate Warden Rick Johnston, SDSP Director Amber Pirgglia, SDSP Grievance Coordinator Melissa Maturan, SDSP Medical Director Dr. Aaron Haynes, SDSP Chief Dental Officer Dr. Michael Lee, SDSP Medical Charge RN Desirae Kummer, SDSP Dentist Dr. Dara Alvand, SDSP Dental Assistant Michelle Evans, and SDSP Nursing Manager Cierra Revolorio.[3] Doc. 17-2 at 2–4.

### A.    Factual Background as Alleged by Hewitt

Hewitt was transferred to the Jameson Annex on October 30, 2025. Id. ¶ 1.[4] During the medical and dental portion of his intake process, Hewitt told the dentist about his underbite, which the dentist said was "severe." Id. ¶ 2–3. The dentist also noted that Hewitt had restorable cavities, discussed his dental plan with his current dentist, and instructed him to send kites to address his restorable dental concerns. Id. ¶ 4. On November 14, 2025, when Hewitt was transferred from the Jameson Annex to the SDSP, he started submitting kites to dental at the SDSP to save his teeth. Id. ¶ 5. In November 2025, Hewitt sent kites to dental about his tooth

---

[2] Hewitt notes that Defendants "acted under color of law as employees, or contractors of the South Dakota Department of Corrections." Doc. 17-2 at 2  Because he does not identify which—if any—Defendants are contractors, see generally id , this Court treats all Defendants as employees of the State of South Dakota for the purposes of screening.

[3] Although Hewitt spells the Defendant's name as Revobrio, his attachments show that the correct spelling is Revolorio  Doc 1-1 at 79  This Court will refer to the Defendant by the correct spelling of her last name in this order

[4] Hewitt includes paragraph numbers 1–8 on pages 1–2 in his Amended Complaint and then again uses paragraph numbers 1–8 on pages 4–5  See Doc. 17-2  Throughout this order, this Court references the information on pages 1–2 by solely its page number, and paragraph numbers 1–8 will solely refer to the paragraphs on pages 4–5

pain and sensitivity and his cavities on November 14, 18, and 25.  Id. ¶¶ 6, 11, 14; see also Doc. 1-1 at 88–90.

On November 25, 2025, Dr. Alvand examined Hewitt related to pain in teeth #14 and #31.  Doc. 17-2 ¶¶ 6, 12; see also Doc. 1-1 at 60.  Dr Alvand concluded tooth #14 "needed a root canal, but [Hewitt] was not allowed even though [he] said that policy stated elsewise."  Doc. 17-2 ¶ 6.  Hewitt asked for a referral, but Dr. Alvand and Evans said that was not possible.  Id. ¶ 7.  Tooth #31 was extracted at this appointment.  Id. ¶ 8.

In December 2025, Hewitt sent two kites about dental conditions causing pain or concern on December 15 and a kite about dental pain for his upper front teeth on December 30.  Id. ¶¶ 15–17; see also Doc. 1-1 at 86–87.  In January 2026, he sent kites for dental work on January 11 and January 14, a kite to the Chief Dental Officer about his underbite and seeking root canals on January 20, and a kite to fix a filling that fell out on January 27.[5]  Doc. 17-2 ¶¶ 18–19, 22–23; Doc. 1-1 at 80–85.  Dr. Lee through Revolorio responded to Hewitt's January 20 kite.  Doc. 17-2 ¶ 28; Doc. 1-1 at 79.  The January 20 kite was denied because "dental within correctional facilities exist to provide emergency services as a priority."  Doc. 17-2 ¶ 28.

On January 20, 2026, dental staff restored Hewitt's teeth #25, #26, and #27.  Id. ¶ 20.  But the filing on tooth #25 fell out shortly after.  Id. ¶ 21.  On January 30, 2026, Hewitt had an appointment to fix tooth #25, and teeth #28 and #29 were restored.  Id. ¶ 24.  During the restoration, Hewitt overheard Evans tell Dr. Alvand that she "wish[ed] [they] had the proper machine and could do the right repair and make crowns [t]here would be much easier."  Id. ¶ 27.

---

[5] Hewitt's Amended Complaint states that the kite was sent on February 27, 2026, Doc  17-2 ¶ 23, but the kite he cites to is dated January 27, 2026, Doc. 1-1 at 80

On February 8, 2026, he filed a grievance about root canals and orthodontic care, and he also sent a kite about tooth pain.[6] Id. ¶¶ 25–26, 30. On February 12, 2026, Hofer denied Hewitt's grievance after reaching out to Kummer and obtaining her response. Id. ¶ 30; Doc. 1-1 at 99. On February 12, 2026, Hewitt filed an administrative remedy request related to the February 8 grievance with Hofer, which was assigned to Revolorio. Doc. 17-2 ¶ 31; Doc. 1-1 at 100. But Warden Roemmich denied the administrative remedy request on February 26, 2026. Doc. 17-2 ¶ 32; Doc. 1-1 at 101.

Hewitt missed his February 23, 2026 dental appointment due to staff mumbling on the intercom. Doc. 17-2 ¶ 33. He contested the missed appointment because the wrong cell was called out. Id. ¶ 34. He sent a kite for a new appointment, and on February 27, 2026, he was seen. Id. ¶¶ 35–36. Hewitt, Dr. Alvand, and Evans discussed the policies about whether referral was allowed for a root canal. Id. ¶¶ 36–37. Dr. Alvand examined Hewitt's underbite and informed Hewitt that "there is a lot of extra pressure on the back teeth due to the under bite [sic]." Id. ¶ 38. Hewitt noted the pain, sensitivity, and discomfort the underbite causes, and Dr. Alvand said "yes I do see that" and "He wishes he could do the proper treatment but that policy does not allow" it. Id. ¶¶ 39–40.

On March 1, 2026, Hewitt sent a kite to the Chief Dental Officer requesting orthodontic care for his pain and addressed SDSP dental policy. Id. ¶ 44; Doc. 1-1 at 74. Hewitt sent a follow-up kite on March 9, 2026, requesting a referral. Doc. 17-2 ¶ 45; Doc. 1-1 at 73. The dental staff's response noted that the request was not medically necessary. Doc. 17-2 ¶ 46; Doc. 1-1 at 107. On March 17, 2026, Hewitt filed a grievance again addressing his request for a root canal, which Hofer denied. Doc. 17-2 ¶¶ 47, 49; Doc. 1-1 at 39, 41. Two days later, Hewitt sent

---

[6] Hewitt's Amended Complaint states that the kite was sent on February 28, 2026, Doc 17-2 ¶ 26, but the kite he cites to is dated, February 8, 2026, Doc 1-1 at 78

a kite to dental staff also requesting a root canal. Doc. 17-2 ¶ 48; Doc. 1-1 at 72. Hewitt was seen by Dr. Alvand and Evans on March 25, 2026, to request proper care because he had intense pain and discomfort and was unable to sleep. Doc. 17-2 ¶ 50.

On March 25, 2026, Hewitt filed another grievance with Hofer; Maturan denied the grievance. Id. ¶¶ 51–52; Doc. 1-1 at 42–43. Hewitt appealed the denial to Lamb, but Lamb denied it because the "issue cannot be appealed to the Secretary of Corrections." Doc. 1-1 at 56; see also id. at 55; Doc. 17-2 ¶¶ 53, 55. On April 25, 2026, Hewitt sent a kite about his dental concerns and pain. Doc. 17-2 ¶ 57; Doc. 1-1 at 70.

Hewitt sues all Defendants in their individual and official capacities. Doc. 17-2 at 2–4. As a result of Defendants' actions, Hewitt has suffered great pain and mental anguish from untreated cavities and has cut his tongue on sharp, chipped, cracked, or broken teeth. Id. ¶¶ 72, 85. Hewitt alleges that because of Defendants' failure to provide treatment he is more "susceptible to bone loss, loss of teeth, infection or irreversible damages." Id. ¶ 95. He sues all Defendants for violating his Eighth Amendment right to be free from cruel and unusual punishment. Id. ¶ 124. He requests that the Court order the following equitable relief: (1) Defendants stop using and enforcing illegal policies and procedures and change their policies and procedures to abide by American Dental Association (ADA) and South Dakota Dentistry board standards and "to allow dentures, implants, crowns and other dental devices at any time during [] incarceration and have clear steps to obtain any of the above stated;" (2) Hewitt get root canals, implants, orthodontic care, and other necessary procedures; (3) SDSP upgrade all equipment to provide ADA acceptable services; (4) SDSP develop "a system to properly schedule treatment plans with dates to address dental needs;" (5) all inmates get the same treatment regardless of past dental trauma and discharge date; (6) "pain" constitute a serious

medical need in DOC Policy; (7) a declaration that Defendants' actions violated Hewitt's rights; (8) reduce the co-pay for dental to $1.00; (9) that "[a]ny license that are held in the position of power that are in direct relation to this suit be suspended for up to 3 years but not less 1 year, at the discretion of the court;" and (10) "[a] 3rd party investigation into all of Dental and Medical procedures and policies to protect and possibly expose other violations, in the course to make the system better." Doc. 17-2 at ¶¶ 126–138, 141, 144–146.  Hewitt requests $100,000 in compensatory damages and $300,000 in punitive damages each from Lamb, Roemmich, Pirgglia, Dr. Haynes, and Dr. Lee.  Id. ¶¶ 149–150, 153, 155, 160.  He requests $100,000 in compensatory damages and $210,000 in punitive damages from Evans.  Id. ¶ 157.  He requests $80,000 in compensatory damages and $240,000 in punitive damages each from Johnston, Hofer, and Maturan.  Id. ¶¶ 151–152, 154.  He requests $70,000 in compensatory damages and $210,000 in punitive damages from Revolorio and Kummer.  Id. ¶¶ 158–159.  He requests $60,000 in compensatory damages and $180,000 in punitive damages from Dr. Alvand.  Id. ¶ 156.

**B.    Legal Standard**

The court must assume as true all facts well pleaded in the complaint.  Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995).  Pro se and civil rights complaints must be liberally construed.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted)  Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663–64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation and footnote omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 554-63)).

Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now screen Hewitt's Amended Complaint under 28 U.S.C. § 1915A.

### C.    Legal Analysis

#### 1.    Class Action

In Hewitt's Amended Complaint, he seeks to assert claims on behalf of "Similarly Situated Prisoners" and alleges "Class Action Allegations." Doc. 17-2 at 1–2 (citation modified). "Under 28 U.S.C. § 1654, a pro se plaintiff may plead their own cases in federal court, but a pro se plaintiff cannot bring claims on behalf of others." Ward v. U.S. Marshals, No 5:23-CV-05061-CCT, 2025 WL 949242, at *15 (D.S.D. Mar. 28, 2025); see also Weigel v. City

of Flandreau, No. 4:23-CV-04184-ECS, 2025 WL 487153, at *2 (D.S.D. Feb. 13, 2025) ("Only a licensed attorney can represent the interests of another person.") (collecting cases, including Jones ex rel. Jones v. Corr. Med. Servs., 401 F.3d 950, 952 (8th Cir. 2005)). "As such, 'a *pro se* litigant generally cannot maintain a class action.'" Johnson v. Sam on Demand, 4:25-CV-04124-ECS, 2026 WL 36053, at *3 (D.S.D. Jan. 6, 2026) (quoting Human v. Fisher Inv., Inc., No. 4:24-CV-01177-MTS, 2025 WL 2106979, at *1 (E.D. Mo. July 28, 2025)). Accordingly, Hewitt cannot maintain claims on behalf of others or as a class while proceeding pro se. Thus, Hewitt's class action claims and claims on behalf of others are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Further, Plaintiff's Motion for Class Certification, Doc. 18, is denied.

### 2.    Eighth Amendment

Hewitt specifies that "All Defendants . . . are sued in their official capacity for injunctive relief, sued in their individual capacity of compensatory and punitive relief." Doc. 17-2 at 2. Accordingly, this Court reads Hewitt's Amended Complaint as only seeking equitable relief against Defendants in their official capacities and only seeking monetary relief against Defendants in their individual capacities.

Hewitt sues Defendants for "deliberate indifference to dental needs" in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment. Doc. 17-2 ¶ 124. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in

10

intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will "mere disagreement with treatment decisions." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting Est. of Rosenberg, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). The Eighth Circuit has noted that "dental care is an important part of proper health care." Hartsfield v. Colburn, 491 F.3d 394, 397 (8th Cir. 2007). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

### a.    Official Capacity Claims

Personal involvement by defendant state officers is generally not required in a plaintiff's official capacity claim for injunctive relief; all that is required is that the defendant officers, "by virtue of [their] office[s], ha[ve] some connection" with the unconstitutional policy in question. See Ex parte Young, 209 U.S. 123, 157 (1908). But because the alleged constitutional violation is cruel and unusual punishment in violation of the Eighth Amendment and because punishment requires intent, some level of subjective knowledge is still required. See Farmer, 511 U.S. at 844. Official capacity suits "in all respects other than name, [are] treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) (citation omitted). So, courts have held that this subjective component can be met through "the institution's historical indifference" rather than the knowledge held by a specific individual. LaMarca v. Turner, 995 F.2d 1526, 1542 (11th Cir. 1993); see also Alberti v. Sheriff of Harris Cnty., 978 F.2d 893, 894–95 (5th Cir. 1992) (per curiam) (finding "that the state knew" of severe overcrowding in Harris County jails); Terry ex rel. Terry v. Hill, 232 F. Supp. 2d 934, 944 (E.D. Ark. 2002) (considering "the entire state of Arkansas, including the executive and legislative branches," to determine whether "the State ha[d] been deliberately indifferent to the needs of pretrial detainees" because defendant, "in his official capacity, . . . [was] merely a representative of . . . the State of Arkansas in the system of mental health treatment" (footnote omitted)).

Hewitt's Amended Complaint alleges that staff at the DOC and SDSP have been made aware of his dental health needs through his many grievances, kites, and conversations with staff as well as through other means, but the staff have not provided proper treatment. Doc. 17-2 ¶¶ 2–32, 36–41, 44–55, 57–58. Hewitt alleges that his underbite has been identified by a dentist as severe and his cavities have been diagnosed by dentists as needing treatment. Id. ¶¶ 3–4, 39–

12

40. Accordingly, Hewitt has for the purposes of screening sufficiently identified serious medical needs and historical indifference to his serious medical needs. Thus, Hewitt's Eighth Amendment deliberate indifference to serious medical needs claims against all Defendants in their official capacities for equitable relief survive § 1915A screening.

### b.  Individual Capacity Claims

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (citation modified).

Hewitt alleges that "[a]ll Defendants have been made aware of the issues Mr. Hewitt is dealing with by either having in person conversations, through kites, or the grievance procedure." Doc. 17-2 ¶ 99. He claims that despite "Defendants know[ing] that cavities left untreated can cause loss of the tooth, infection, and extreme pain," "Defendants consciously chose to delay treatment so they can perform easier and cheaper methods over the correct treatment an inmate would get in the community." Id. ¶¶ 100, 103. "[A]ny defendant mentioned has the ability to step in and prevent injury, or correct the unconstitutional policies and procedures." Id. ¶ 107.

Hewitt clearly alleges that Dr. Alvand, Evans, Kummer, Revolorio, and Dr. Lee were medical or dental staff aware of his pain and dental concerns but did not provide him with adequate treatment. Id. ¶¶ 6–7, 27–28, 31, 36–40. He alleges that Lamb, Roemmich, Hofer, and

13

Maturan were deliberately indifferent because they were made aware of his dental concerns through grievances or kites, but they denied his requests for treatment. Id. ¶¶ 30, 32, 49, 51–53, 55. Hewitt alleges that his underbite has been identified by a dentist as severe and his cavities have been diagnosed by dentists as needing treatment. Id. ¶¶ 3–4, 39–40. Although some of Hewitt's allegations may amount to mere disagreement with treatment methods instead of deliberate indifference, and some of the Defendants may have been prison officials merely relying on the decisions of medical providers, Hewitt has sufficiently alleged that Dr. Alvand, Evans, Kummer, Revolorio, Dr. Lee, Lamb, Roemmich, Hofer, and Maturan were deliberately indifferent to his serious medical needs for the screening stage. See LeGrand v. Carpenter, No. 4:22-CV-04168-KES, 2023 WL 3324956, at *1, 4 (D.S.D. May 9, 2023) (holding that deliberate indifference to serious medical needs claim against warden survived § 1915A screening when warden was made aware of lack of treatment through prison grievances but denied grievances). Accordingly, Hewitt's claims against Dr. Alvand, Evans, Kummer, Revolorio, Dr. Lee, Lamb, Roemmich, Hofer, and Maturan in their individual capacities for money damages survive § 1915A screening.

Hewitt also sues Johnston, Pirgglia, and Dr. Haynes for deliberate indifference to his serious medical needs. But Hewitt has not alleged any facts specific to these three Defendants about how they learned of Hewitt's medical needs or when they denied him medical care. See generally Docs. 17-2, 1-1. Hewitt's blanket statements that Defendants were aware of his medical condition without any facts indicating how or when Johnston, Pirgglia, and Dr. Haynes were made aware and how or when they were deliberately indifferent in their response to Hewitt's medical needs is insufficient to meet Twombly's pleading standards. Accordingly, Hewitt's Eighth Amendment deliberate indifference to serious medical needs claims against

Johnston, Pirgglia, and Dr. Haynes in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 3.    Negligence

Although Hewitt specifically notes that his claims arise under the Eighth Amendment, he also alleges that Defendants acted negligently and in violation of the standard of care. Doc. 17-2 ¶¶ 42, 45, 62, 68, 84, 89, 110, 117. Because Hewitt is proceeding pro se and courts must liberally construe pro se filings, see Erickson, 551 U.S. at 94, this Court reads Hewitt's Amended Complaint as also alleging state-law negligence claims against all Defendants. Because this Court has original jurisdiction over Hewitt's Eighth Amendment claims, this Court exercises supplemental jurisdiction over his negligence claims. 28 U.S.C. § 1367(a).

For Hewitt's negligence claims, the Court applies South Dakota substantive law. Witzman v. Gross, 148 F.3d 988, 990 (8th Cir. 1998). In South Dakota, "[i]n order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury." Hanson v. Big Stone Therapies, Inc., 916 N.W.2d 151, 158 (S.D. 2018) (quoting Hamilton v. Sommers, 855 N.W.2d 855, 861 (S.D. 2014)). "In a suit for professional negligence, the plaintiff must prove that the professional deviated from the required standard of care." Id. (citing Magbuhat v. Kovarik, 382 N.W.2d 43, 46 (S.D. 1986)).

Hewitt alleges that the DOC must provide healthcare for inmates, and Defendants failed to properly do so. Doc. 17-2 ¶¶ 64–67, 78. He alleges that Defendants' failure to provide dental care caused him severe pain and worsening of the condition of his teeth. Id. ¶¶ 81, 84–87. Hewitt has alleged that Defendants are negligent, and medical professionals Dr. Alvand, Evans, Kummer, Revolorio, and Dr. Lee breached their professional standard of care. Id. ¶¶ 42, 45, 62,

15

68, 84, 89, 110, 117. Thus, Hewitt's state-law negligence claims against Lamb, Roemmich, Hofer, and Maturan and Hewitt's state-law professional negligence (medical malpractice) claims against Dr. Alvand, Evans, Kummer, Revolorio, and Dr. Lee survive § 1915A screening. Hewitt has not alleged facts sufficient to show that Johnston, Pirrglia, and Dr. Haynes breached any duty. Accordingly, Hewitt's negligence claims against Johnston and Pirrglia and medical malpractice claim against Dr. Haynes are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## IV.    Motion to Appoint Counsel

Hewitt also filed a motion to appoint counsel. Doc. 4. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, this Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claims. Id. At this time, Hewitt's claims do not appear to be complex, and he is able to investigate the facts and present his claims adequately. This Court believes that Hewitt is capable of pursuing his claims pro se at this phase of litigation, and his motion to appoint counsel, Doc. 4, is denied at this time.

## V.    Motion to Expedite

Hewitt moves "for an expedited process to his pending motions in this matter." Doc. 19 at 1. He claims that his teeth require dire attention and that his kites to dental have disappeared. Id. In this Order, this Court has ruled on all pending motions, except for the motions for preliminary injunction. This Court grants in part Hewitt's Motion to Expedite Motions, Doc. 19. Defendants are required to respond to Hewitt's motions for preliminary injunction within fourteen days of service.

16

## VI.    Conclusion

It is

ORDERED that Hewitt's first motion for leave to proceed in forma pauperis, Doc. 2, is granted.  It is further

ORDERED that Hewitt's second motion for leave to proceed in forma pauperis, Doc. 11, is denied as moot.  It is further

ORDERED that the Clerk of Court shall send a copy of this order to the appropriate financial official at Hewitt's institution.  It is further

ORDERED that the institution having custody of Hewitt is directed that whenever the amount in Hewitt's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Hewitt's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1) until the $350 filing fee is paid in full.  It is further

ORDERED that Hewitt's class action claims and claims on behalf of others are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  It is further

ORDERED that Hewitt's Eighth Amendment deliberate indifference to serious medical needs claims against Dr. Alvand, Evans, Kummer, Revolorio, Dr. Lee, Lamb, Roemmich, Hofer, Maturan, Johnston, Pirgglia, and Dr. Haynes in their official capacities for equitable relief survive § 1915A screening.  It is further

ORDERED that Hewitt's Eighth Amendment deliberate indifference to serious medical needs claims against Dr. Alvand, Evans, Kummer, Revolorio, Dr. Lee, Lamb, Roemmich, Hofer, and Maturan in their individual capacities for money damages survive § 1915A screening.  It is further

17

ORDERED that Hewitt's Eighth Amendment deliberate indifference to serious medical needs claims against Johnston, Pirgglia, and Dr. Haynes in their individual capacities for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Hewitt's state-law negligence claims against Lamb, Roemmich, Hofer, and Maturan and Hewitt's state-law medical malpractice claims against Dr. Alvand, Evans, Kummer, Revolorio, and Dr. Lee survive § 1915A screening. It is further

ORDERED that Hewitt's state-law negligence claims against Johnston and Pirgglia and medical malpractice claim against Dr. Haynes are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Plaintiff's Motion for Class Certification, Doc. 18, is denied. It is further

ORDERED that Hewitt's Motion to Appoint Counsel, Doc. 4, is denied. It is further

ORDERED that Hewitt's Motion to Expedite Motions, Doc. 19, is granted in part. Defendants shall respond to Hewitt's Motions for Preliminary Injunction, Docs. 5 and 9, within fourteen days from the date of service. It is further

ORDERED that the Clerk shall send blank summons forms and United States Marshals Service Forms (Form USM-285) to Hewitt so that he may complete the forms to cause the Amended Complaint to be served upon Defendants Dr. Alvand, Evans, Kummer, Revolorio, Dr. Lee, Lamb, Roemmich, Hofer, Maturan, Johnston, Pirgglia, and Dr. Haynes. It is further

ORDERED that Hewitt shall complete and send the Clerk of Court a separate summons and USM-285 form for each Defendant within thirty days from the date of this Court's screening order. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will

18

issue the summons. If the completed summons and USM-285 form are not submitted as directed, the Amended Complaint may be dismissed. It is further

ORDERED that the United States Marshals Service shall serve the completed summonses, together with a copy of the Amended Complaint and the attachments, Docs. 1-1, and this order upon the Defendants. It is further

ORDERED that Defendants serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the Defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

ORDERED that Hewitt keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by this Court's Civil Local Rules while this case is pending.

DATED this _10_ day of July, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE